THE MAYOR AND ALDERMEN OF JERSEY CITY

*v.*

JERSEY CITY WATER SUPPLY COMPANY et al.

[Decided August 9th, 1905.]

The contract of a city for the construction of a water works plant stipulated that the city should pay for water at a fixed price according to quantity used, and authorized it to purchase the completed plant for a specified sum on giving notice of its intent to purchase within one year after the date of the contract. The contractor defaulted, and the city purchased water from a third person for a specified price. Subsequently the third person turned over the supply of the water to the contractor, and it began to furnish water from the incomplete system, and to charge the city the rate fixed in the contract. The city elected to buy the plant at its completion for the price named.—*Held*, that the city, though in

equity the owner of the plant, could not at law resist actions for water supplied at the rate fixed in the contract, and a court of equity would restrain actions at law therefor until the equitable questions were settled, subject to the duty of the city to pay interest on the principal sum agreed to be paid for the completed plant, less payments made on account of water supplied by the contractor, together with the cost of operating the plant.

On bill, &c.  On motion for preliminary injunction.

*Mr. James B. Vredenburgh,* for the complainants.

*Mr. Gilbert Collins,* for the defendants.

BERGEN, V. C.

Under a contract, dated February 28th, 1899, between the complainant and Patrick H. Flynn, who has since assigned his interest therein to the defendant Jersey City Water Supply Company, Flynn agreed to construct a system of water works for Jersey City, and to supply it with pure and wholesome water, in accordance with specifications made a part of the contract. The city on its part agreed to pay for such water at a price fixed in the contract per million gallons, according to the quantity used. The contract further stipulated that upon receipt of a notice that the city desired to purchase the works when completed, Flynn would convey the completed plant to the city for $7,595,000, provided notice of the intention to purchase was given within one year after the date of the contract. The contract contained other options to purchase reserved by the city, but as the option to purchase at completion was exercised, and the required notice given, they need not be considered. The case made by the bill is that the city, instead of buying the water at so much per gallon, has exercised its option and elected to buy the plant at its completion for the price named. It appears that Flynn did not complete the works within the time agreed upon, and it is claimed has not yet fully qualified himself to convey all he agreed to pass over. Nevertheless, the city, in view of the great interest it has in securing a proper water-supply, demands that the defendant comply as fully as they can, submitting to such

deduction from the contract price as this court shall adjudge equitable to meet the cost of a substantial compliance with the contract. The right to a decree for specific performance is not now under consideration, and only so much of the contract and claim is here set out as is necessary to properly determine whether suits brought by defendants against the complainant to recover for water furnished at the price fixed per gallon in the contract, if the city do not purchase, should be restrained and the defendants enjoined until the final determination of this cause, and the equitable rights of the respective parties ascertained and decreed.

The default in the completion of the works compelled the complainant to contract for a temporary supply of water with the East Jersey Water Company, a corporation whose relations with the Jersey City Water Supply Company were sufficiently friendly to induce it to agree to furnish the quantity required in consideration of the payment of a sum equal to the interest, at four per cent., on the purchase price and the estimated cost to the complainant of operating the plant if it were in possession. This arrangement continued until May 24th, 1904, when the East Jersey company, without complainant's knowledge, ceased to furnish the water, and turned over to the defendant the supply main then in use, and that company then began to furnish water from its incomplete system and to charge the complainant therefor, but against its protest, at the rate fixed in the contract should the city not purchase on completion, which increased the cost to the city over the rate paid for the temporary supply to the extent of $80,000 per annum. It is the refusal to pay these charges that is the foundation of the action at law sought to be enjoined. The present claim of the city is that, having complied with its agreement, and thereby entitled to a conveyance, it is in equity the owner, and while it will not be able to resist successfully the actions at law, in equity the defendant holds the property in trust for it, and is not, in any event, entitled to more than the purchase price, interest thereon, and the necessary cost of operation, and tenders itself ready to accept the conveyance and to make such payment as may equitably be required.

It appears to me that this claim has the support of authority, and that upon the performance of the conditions cast upon it by the contract, all of which are alleged to be performed, a *prima facie* case is presented which shows that the vendee has acquired an equitable estate in the property, subject to the vendor's lien for the purchase price, falling within the rule as stated in *1 Pom. Eq. Jur.* § *372,* and that the vendor cannot, by neglecting to perform his part of the contract, obtain, as alleged in the bill, a position to extort money beyond the reach of this court. · A large and populous city is dependent for health and comfort upon the water to be furnished from this supply, and if the defendant, by refusing to complete the works and comply with its bargain, can compel the city to accept its construction of this agreement and take the water on its terms, for use the water the people must, or perish, a condition is presented that not only justifies but demands the interference of this court. As specific performance can only be had in this court, the complainant is properly here, and as the right of defendants to recover for water supplied depends upon the question of equitable ownership, and the price to be paid depends upon deduction to be allowed for incomplete performance, a case cognizable in equity is presented. I think the suits should be restrained, at least until the equitable questions are disposed of, and will so advise. In consideration of the large amount of money involved and the great expense of operating the plant, the defendant ought not to be deprived of all income, and to meet this the city should pay the interest on the principal sum, at the rate of four per cent. per annum, to cover the past and future period since May 24th, 1904, less payments, if any, made on account of water supplied by the defendant, and also $50,000 per annum for the same term and subject to same conditions as the estimated cost of operation, that being the basis of the agreement for the temporary supply, such payments to be made quarterly as to the future, and in full as to the past, but without prejudice to either party; nor shall payment or acceptance be taken as a waiver of any right, either in this cause or on the suits enjoined. If performance shall be decreed, the payments can be

adjusted in fixing the amount to be paid. If refused, they will be considered as so much paid on account. I will advise an injunction order according to the views I have expressed.